988 F.2d 117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALKO JEWELRY MANUFACTURING CORPORATION,
Plaintiff-Cross-Complainant/Counter-Defendant-Appellant,
v.
LLOYD'S OF LONDON, et al.,
Defendants-Cross-Defendants/Counter-Claimants-Appellees.
 No. 91-16553.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided Feb. 25, 1993.
 
 Appeal from the United States District Court for the Northern District of California, No. CV-90-02365-VRW; Vaughn R. Walker, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Alko appeals the district court's grant of summary judgment. The court held that Lloyd's of London, Alko's insurer under a jeweler's block policy, did not have to indemnify Alko for losses stemming from a jewelry burglary since Alko's principal shareholder failed to disclose when applying for the policy that he had been previously indicted for insurance fraud. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * We first address Alko's argument that the district court lacked subject matter jurisdiction because third-party removal, piecemeal removal of claims and removal based on claims that were not separate and independent, is fatally defective. Alko did not object to removal in the district court. When a party fails to object to removal and the case is tried on the merits, the only question on appeal is whether the district court would have had subject matter jurisdiction had the case been originally brought in that court. Grubbs v. General Electric Credit Corp., 405 U.S. 699, 702 (1972). "The Grubbs rule applies when ... the merits are reached and determined on a motion for summary judgment." Sorosky v. Burroughs Corp., 826 F.2d 794, 798 (9th Cir.1987); cf. Libhart v. Santa Monica Dairy Co., 592 F.2d 1062 (9th Cir.1979) (partial summary judgment is not an adjudication on the merits under Grubbs ); Stone v. Stone, 632 F.2d 740, 742 (9th Cir.1980), cert. denied, 453 U.S. 922 (1981) (distinguishing Libhart on ground it involved partial judgment).
 
 
 4
 Because the parties are diverse and the amount in controversy exceeds $50,000, the district court would have had subject matter jurisdiction had the action originally been brought there. Under Grubbs, therefore, defects in removal jurisdiction have been waived.
 
 II
 
 5
 Alko argues that the district court erroneously ruled that Syelsky's failure to disclose his indictment for insurance fraud was material as a matter of law. This depends on whether Alko had a duty to disclose when the underwriters had not asked about criminal history.
 
 
 6
 * Lloyd's argues that its Jewellers Block Policy is "marine insurance" under Cal.Ins.Code § 103 (West 1972), and that an insured has an affirmative duty of disclosure under the "marine rule" and Cal.Ins.Code § 1900 (West 1972).
 
 
 7
 Section 103 plainly provides that marine insurance includes "precious stones, jewels, jewelry, gold, silver and other precious metals, whether used in business or trade or otherwise and whether the same be in course of transportation or otherwise." Cal.Ins.Code § 103(c). Because Lloyd's Jewellers Block Policy protects against damage to precious stones, jewels, jewelry, gold, silver and other precious metals, this is a marine policy under the plain language of § 103(c). See Jackson v. Leads Diamond Corp., 767 F.Supp. 268 (S.D.Fla.1991) (marine rule applies to jeweler's block policy under Florida law).
 
 
 8
 Alko argues that the policy is actually "inland marine insurance" which is distinct from "marine insurance" and thus is not subject to the marine disclosure rule. Even if a jeweler's block policy is "inland marine insurance," under § 103(b) "marine insurance" includes insurance against any loss or damage to property in connection with "inland marine ... insurance."
 
 
 9
 Alko also argues that this kind of policy cannot be "marine insurance" because it would be inappropriate to apply the marine rule of disclosure since the risk had nothing to do with the sea. While it is true that other courts have declined to apply the marine rule to similar policies, see, e.g., Stecker v. American Home Fire Assur. Co., 299 N.Y. 1 (1949) ("marine rule" does not apply to "salesman floater" fur coat policy, or other inland marine policies, despite New York statute); Ross v. Insurance Co. of North America, 193 F.2d 428 (2d Cir.1952) (inland marine policies are governed by "ordinary" rule of disclosure, not "marine rule"); Blair v. National Security Ins. Co., 126 F.2d 955 (3d Cir.1942) (jewelry-fur floater policy not subject to the marine rule under New York law); see also Olson v. Standard Marine Ins. Co., 109 Cal.App.2d 130 (1952) (applying ordinary rule to a "jewelry-fur floater" policy without consideration of whether it was marine insurance); Couch Encyclopedia of Insurance Law § 38.73 at 444-45 (marine rule does not apply to inland marine policies), we are constrained by how the California legislature has defined marine insurance.
 
 
 10
 Alko finally argues that § 103 is not "definitional," but is rather only "permissive." We are not persuaded, as § 103 is the only place in which marine insurance is defined.
 
 B
 
 11
 Alko contends that even if its policy is marine insurance, there is no indication that the California legislature intended the marine rule of disclosure set out in Cal.Ins.Code § 1900 (West 1972) to apply to anything other than traditional marine risks. It notes that the precursor to § 1900 was enacted before the evolution of jewellers block policies. We cannot agree, because under § 103, "marine insurance" plainly includes a jewellers block policy.
 
 
 12
 Section 1900 requires each party to communicate "(a) [a]ll information which he possesses and which is material to the risk, except such as is exempt from such communication in the case of other insurance." "The marine insurance contract is conceived in uttermost good faith (uberrimae fidei ), and the assured must disclose every material circumstance which in the ordinary course of business ought to be known to him." Reliance Ins. Co. v. McGrath, 671 F.Supp. 669, 678 (N.D.Cal.1987). The insured is obligated to "volunteer information which might have a bearing on the scope of the risk assumed, and the failure to do so will allow the insurer to void the policy." Id.; Couch Encyclopedia of Insurance, § 38.73 at 444-45.
 
 
 13
 Given this mandate, we agree with the district court that an insured's indictment for insurance fraud is material to the risk. Accordingly, under § 1900 Alko had a duty to disclose it.
 
 C
 
 14
 Alko argues that, assuming the policy is subject to the marine rule of disclosure, there is a genuine issue as to materiality. It points to Vincent Anderson's declaration, which indicates that since inquiry about criminal involvement was not made and information about it was obtained after the loss occurred, he would not have considered the failure to come forward as adequate grounds for rescission. Alko also contends that the absence of inquiry by Lloyd's creates an inference of immateriality sufficient to overcome summary judgment. As Anderson's opinion assumes that Syelsky was not required to disclose information material to the risk without inquiry, it does not create a genuine issue because it ignores the obligation incumbent on the insured under a marine policy. Further, it speaks only generally of information about a criminal indictment--not specifically about an indictment for insurance fraud. The declaration of Guy Oakes that Lloyd's would have canceled the policy had it known of Syelsky's indictment, albeit self-serving, is uncontradicted.
 
 
 15
 Under these circumstances, we cannot say that the mere failure of Lloyd's to make inquiry into criminal history suffices to raise a rational inference of materiality. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 IV
 
 16
 Alko urges that Cal.Ins.Code § 650 precludes the underwriters from rescinding because an action already had been commenced on the policy. Alko points to Mt. Hawley Ins. v. Federal Sav. & Loan Ins. Corp., 695 F.Supp. 469, 477 (C.D.Cal.1987) which held that § 650 requires an insurer to rescind a policy by notifying the insured and returning the paid premiums before filing a complaint. Lloyd's points to National Union Fire Ins. Co. v. Dixon, 663 F.Supp. 1121 (N.D.Cal.1987) which held that § 650 only bars a particular remedy, rescission, and not an insurer's right to seek other relief.
 
 
 17
 We need not resolve this conflict, however, because section 650 is in Division 1, Part 1 of the Insurance Code, which includes §§ 1-679.73. Thus, § 650 applies to the "ordinary" rules of disclosure as specified in §§ 330-39, but does not apply to the "marine" rule of Cal.Ins.Code § 1900, which is codified in Division 2, Part 1 of the code. Consequently, Cal.Ins.Code § 650 does not apply to marine insurance policies such as this one.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3